IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| TWIST AERO, LLC<br>47 SOUTH LIMESTONE STREET<br>JAMESTOWN, OH 45335 | :<br>:<br>: | Case No.<br><br>JUDGE |
| Plaintiff, | :<br>:<br>: | |
| vs. | :<br>: | |
| B GSE GROUP, LLC<br>14034 CLARENDON POINT COURT<br>HUNTERSVILLE, NC 28078 | :<br>:<br>:<br>: | COMPLAINT FOR MONEY DAMAGES<br>AND FOR INJUNCTIVE RELIEF |
| Also serve:<br>FEROCITY MANAGEMENT<br>CONSULTING, INC.<br>483 WILLIAMSON ROAD, SUITE F<br>MOORESVILLE, NC 28117-9224 | :<br>:<br>:<br>:<br>:<br>: | JURY DEMAND ENDORSED HEREON |
| Defendant. | : | |

Plaintiff Twist Aero, LLC ("Plaintiff Twist") states the following for its Complaint against Defendant B GSE Group, LLC ("B_GSE" or "Defendant"):

**I.      NATURE OF THE ACTION**

1.      This is an action to remedy false advertising, deceptive trade practices, and breach of contract.

2.      Defendant B_GSE systematically has made and continues to make false and misleading claims comparing itself to industry leaders, including Plaintiff Twist, in order to deceive consumers about Defendant B_GSE's capabilities and the source of goods that Defendant B_GSE sells in competition with Plaintiff Twist.

## II.     PARTIES, JURISDICTION AND VENUE

3.     Plaintiff Twist Aero, LLC ("Plaintiff Twist") is an Ohio limited liability company with its offices and principal place of business at 47 South Limestone Street, Jamestown, Ohio 45335.

4.     Plaintiff Twist's sole member is Twist Holdings, Inc., an Ohio corporation whose offices and principal place of business are in Jamestown, Ohio.

5.     Defendant B GSE Group, LLC ("Defendant B_GSE") is a North Carolina limited liability company with its offices and principal place of business at 14034 Clarendon Point Court, Huntersville, North Carolina 28078.

6.     Defendant B_GSE's members, to the best of Plaintiff Twist's knowledge, are Bryan Bullerdick and Scott Dils, both of whom are believed to reside in the State of North Carolina.

7.     Defendant B_GSE has transacted business with Twist in Ohio since 2014.

8.     Between 2015 and 2018, Defendant B_GSE submitted approximately thirteen (13) separate orders to Plaintiff Twist worth approximately $4.2 Million in total, averaging more than $1 Million per year.

9.     Defendant B_GSE's principal owner, Bryan Bullerdick, visited Plaintiff Twist in Jamestown, Ohio twice between 2015-2018 in connection with the business transactions between Plaintiff Twist and Defendant B_GSE.

10.     Scot Dils, a B_GSE owner or employee, visited Plaintiff Twist in Jamestown, Ohio between 2015-2018 in connection with the business transactions between Plaintiff Twist and Defendant B_GSE.

11.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. 1125(a)(1).

12. This Court has supplemental jurisdiction over the subject matter of Plaintiff Twist's deceptive trade practices, and breach of contract claims pursuant to 28 U.S.C. § 1367 because those claims for relief are based on state law and are substantially related to and arise from the same facts as those claims for relief over which the Court has original jurisdiction.

13. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and S.D. Ohio Civ. R. 82.1(e) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### III. GENERAL FACTUAL ALLEGATIONS

**A. Introduction to Plaintiff Twist and its innovative Boom-Air® hose management system**

14. Plaintiff Twist is a manufacturer and world-wide distributor of aviation-related products and services including pre-conditioned air units (PCAs), the Boom-Air® hose management system, ground power units (GPUs) and related accessories (all, collectively, Ground Support Equipment or "GSE").

15. The Boom-Air® system is protected by trademarks registered by Twist, Inc. and patents registered by Twist, Inc. and Boom Air, LLC.

16. The Boom-Air® hose management system ("Boom-Air®) received its first patents in 2001 and leads the marketplace for PCA hose management solutions.

17. Plaintiff Twist manufactures, markets, distributes, installs, and services Boom-Air® hose management system with the full authorization and consent of the Boom-Air® patent and trademark registrants.

18. Plaintiff Twist's customers include aviation installations, civil air carriers, and government agencies such as United States military organizations like the United States Navy, the United States Marine Corps., and the United States Air Force.

3

19. Plaintiff Twist provides cradle-to-grave engineering services, sales, installation, service, and support for its products.

20. Plaintiff Twist's Boom-Air® solved numerous problems with existing hose management products, including but not limited to:

   a. The Boom-Air® reduced or eliminated kinked hoses and damages associated with kinked hoses;

   b. The Boom-Air® reduced the need for supplementing ground-supplied air by operating aircraft auxiliary power units;

   c. The Boom-Air®'s ease of use helped reduce injuries to ground support personnel;

   d. The Boom-Air® lasted longer and reduced maintenance and replacement costs;

   e. The Boom-Air® design helped reduce hoses being sucked into aircraft engines;

   f. The Boom-Air® allows users to extend and retract hoses at variable speeds;

   g. The Boom-Air® allows users to extend only the amount of hose needed, thereby eliminating restrictions and enhancing airflow;

   h. The Boom-Air® reduced air loss by minimizing the number of seams in the hose;

   i. The Boom-Air® improved function with its mandrel concept that never collapses, bends, or restricts airflow;

   j. The Boom-Air® can be mounted under or above the jetway bridge beam as well as under cabin; and

   k. The Boom-Air® can be ground mounted, mounted onto a mobile PCA, or cart mounted.

21. The Boom-Air® is manufactured in the United States by Plaintiff Twist in Jamestown, Ohio.

22. The Boom-Air® system is well known and widely accepted within the aviation industry in the United States and abroad.

### B. Introduction to Defendant B_GSE

23. Defendant B_GSE bills itself as an "Extraordinary Company" and "the #1 aviation integration company."

24. Defendant B_GSE sells GSE designed, engineered, and manufactured by others.

25. Defendant B_GSE represents itself as a firm with extensive engineering and manufacturing experience, but, upon information and belief, depends entirely upon third party contractors for engineering, design, and manufacturing.

26. Defendant B_GSE traces its roots to December 2010 when one of its founding members, Bryan Bullerdick, organized Bullerdick GSE LLC, a North Carolina limited liability company that later merged with B GSE Group, LLC.

27. Mr. Bullerdick's work history includes employment as a pilot with US Airways from 1997-2002, and as a salesperson with FCX Systems, Inc. from 2004-2010 and John Bean Technologies ("JBT") from 2011 to 2014.

28. FCX Systems, Inc. manufactures GSE, including PCA units, air handlers, frequency converters, and ground power units, etc.

29. JBT manufactures, supplies, and services GSE, including cargo loaders, deicers, tow bar tractors, passenger boarding bridges, PCA units, and ground power units.

30. From January 2012 to January of 2013, Defendant B_GSE served as a JBT distributor and the exclusive supplier of JBT products for certain small business set-aside projects.

31. Defendant B_GSE has established a business model where it takes credit for engineering, design, or manufacturing of products by other entities and Defendant B_GSE distributes or resells such products.

32. For example, Defendant B_GSE claims (within a single article – "How to Supply Power and Air for the F-35") to have developed specialized service PITs with USS PIT Co.; high pressure PCA units with JBT; specialty products for safe power in USS EZ Access Pop Up style PITs; and specialized GPUs with JBT.

33. While Defendant B_GSE partnered with the entities it mentions, each other entity designed, engineered, and manufactured the products in question.

34. In other circumstances, Defendant B_GSE simply copies photographs or text from other manufacturer's work and passes others' work off as its own.

35. For example, A.T.E.S. Italiana ("ATES") is an Italian company that has manufactured GSE for approximately forty (40) years.

36. ATES developed a hose management system for which it sought patent protection in and around 2012.

37. ATES advertises its hose management system on its website (http://www.atesitaliana.com/en/products/shr%C2%AE%E2%84%A2-pcair-hose-retriever/s-h-r-%C2%AE%E2%84%A2-4m-en.html) and provides an informational brochure describing its hose management system ("ATES Brochure"). A copy of the ATES Brochure is attached and incorporated as Exhibit 1.

38. Defendant B_GSE extensively copied the ATES Brochure and provided its own version at https://www.bullerdickgse.com/hoseretriever ("B_GSE Hose Management Brochure"). A copy of the B_GSE Hose Management Brochure is attached and incorporated as Exhibit 2.

39. The B_GSE Hose Management Brochure parrots the language from the ATES Brochure and uses the same photographs:






**Ex. 1. ATES Brochure**         **Ex. 2. B_GSE Hose Management Brochure**

40. Defendant B_GSE has copied the ATES Brochure and is passing off the ATES product as if B_GSE were its manufacturer.

41. Upon information and belief, Bullerdick and Defendant B_GSE have distributed one or more products manufactured by FCX, JBT, or Plaintiff Twist between 2013 and 2019.

42. Despite relying upon FCX, JBT, or Plaintiff Twist to design, engineer, manufacture, and install such products, Defendant B_GSE caused or attempted to cause third parties to believe that Defendant B_GSE itself has the expertise to design, engineer, manufacture and install such products independently of the various partners with whom Defendant B_GSE has worked.

43. Among other business practices, Defendant B_GSE regularly has covered over or removed the name and contact information for original manufacturers from submissions, finished goods, operating manuals, drawings, etc.

**C.    Plaintiff Twist's relationship with Defendant B_GSE**

44. In and around the Fall of 2014, Defendant B_GSE began seeking quotes from Plaintiff Twist for PCA units for a civilian application.

7

45. Defendant B_GSE issued one of its first purchase orders to Plaintiff Twist on or around February 5, 2015.

46. In and around the Fall of 2016, Defendant B_GSE asked Plaintiff Twist to quote prices to manufacture seven (7) high pressure PCA units for aircraft hangars located at Naval Air Station Lemoore in Lemoore, California.

47. The aircraft hangars included extensive specifications since the hangars are intended for use with the U.S. Military's F-35 Joint Strike Fighter ("JSF") Program.

48. Defendant B_GSE issued a purchase order, P.O. No. 2331, on or about September 23, 2016, and requested that Plaintiff Twist provide (a) seven (7) high pressure PCA units; (b) a master controller; (c) start up and training (also known as "commissioning"); and (d) floor stands. A copy of Defendant B_GSE's P.O. No. 2331 from which confidential pricing information has been redacted is attached and incorporated as Exhibit 3.

49. Plaintiff Twist completed its work manufacturing the high pressure PCA units and the master controller.

50. Plaintiff Twist completed its work installing and commissioning the PCA units at Lemoore and issued an invoice to Defendant B_GSE on or about March 20, 2019. A copy of Plaintiff Twist Invoice No. 69092 ("Twist/March Invoice") is attached and incorporated as Exhibit 4.

51. Despite reminders in June of 2019, Defendant B_GSE has failed and refuses to pay the Twist/March Invoice.

52. Defendant B_GSE owes payment in the amount of Twenty-Three Thousand Three Hundred and Eighty Dollars ($23,380.00) plus interest from March 20, 2019 to Plaintiff Twist for services rendered in connection with its work referenced above.

53. In connection with and while working with Defendant B_GSE, Plaintiff Twist learned of Defendant B_GSE's misleading business model, and Defendant B_GSE's introduction of a hose management system that Defendant B_GSE has compared to Plaintiff Twist's Boom-Air® system.

### D. Defendant B_GSE's rebranded hose management system and false claims

54. At dates and times unknown to Plaintiff Twist, Defendant B_GSE imported hose management systems manufactured by an Italian company, A.T.E.S. Italiana ("ATES"), for sale and distribution within the United States.

55. Contrary to Defendant B_GSE's assertions otherwise, and upon information and belief, Defendant B_GSE is merely conducting final assembly, rebranding, and reselling ATES hose management systems within the United States.

56. Upon information and belief, Defendant B_GSE has sold the hose management systems to American Airlines between 2018 and mid-2019.

57. In early 2019, Defendant B_GSE began marketing a hose management system at on its website at https://www.bullerdickgse.com/hoseretriever ("Hose Retriever Webpage") where B_GSE:

- a. Claims made on the web page itself (referred to herein as the "B_GSE Hose Retriever Webpage");

- b. Posted a twenty-seven (27) second (:27) video (electronic file name: B_GSE Movie - referred to herein as the "B_GSE Movie");

- c. Posted a four (4) minute and five (5) second (4:05) animated slideshow (electronic file name: EXTRODNARY B GSE Group - referred to herein as the "B_GSE Slideshow");

- d. Posted a ten (10) page PDF version of the slideshow (electronic file name: EXTRODNARY B GSE - referred to herein as the "B_GSE Handout"); and

      e.      Posted a four (4) page PDF brochure (electronic file name: 2020_Page_1 - the B_GSE Hose Management Brochure, Exhibit 2).

58. Defendant B_GSE's Hose Retriever Webpage (a printed copy of which is attached and incorporated as Exhibit 5) asserts that Defendant B_GSE's Hose Retriever is:

- FASTER
- LIGHTER
- Easy to Install, and
- MOST EFFICIENT.

59. Defendant B_GSE's Hose Retriever Webpage implicitly compares Defendant B_GSE's hose management system to the Boom-Air® hose management system.

60. Defendant B_GSE's Hose Retriever Webpage asserts that Defendant B_GSE purchased "manufacturing rights in 2019 to what some customers may have known as an ATES hose retriever."

61. Upon information and belief, Defendant B_GSE does not manufacture the hose retrieval systems that it is marketing and does not have "manufacturing rights."

62. The B_GSE Hose Retriever Webpage asserts, "The newly named CoolJet® Hose Retriever will have all the high performance and qualities of the ATES unit but B GSE will be changing and improving the product for the American Market while being sensitive of current USA patents."

63. Upon information and belief, Defendant B_GSE has not changed or improved the ATES unit for the American Market, has no intention of doing so, and lacks the knowledge and expertise to do so.

64. Defendant B_GSE's Hose Retriever Webpage includes advertising that users can download and view: Defendant B_GSE's Movie and Defendant B_GSE's Slideshow, copies of which cannot be attached here.

65. Defendant B_GSE's Movie visually demonstrates the B_GSE/ATES hose retriever without comment.

66. Defendant B_GSE's Hose Retriever Webpage also includes advertising that users can download and print: Defendant B_GSE's Handout. A copy of Defendant B_GSE's Handout is attached and incorporated as Exhibit 6.

67. Defendant B_GSE's Slideshow is substantially similar to Defendant B_GSE's Handout.

68. Within the foregoing advertising pieces (the B_GSE Hose Retriever Webpage, the B_GSE Slideshow, and the B_GSE Handout), Defendant B_GSE compares itself and its hose management system to Twist and the Boom-Air® system.

69. Within the B_GSE Slideshow and the B_GSE Handout, Defendant B_GSE describes Plaintiff Twist's Boom-Air® system as the "The 'OLD' way" (page 5 of the B_GSE Handout) and the B_GSE/ATES product as "The 'New' way" (page 6 of the B_GSE Handout).

70. Within the B_GSE Slideshow, Defendant B_GSE implicitly refers to Plaintiff Twist's Boom-Air® system and falsely states "the Hose Retriever System must be mounted outside and substantially aft of the lift columns."

71. Within the B_GSE Handout, Defendant B_GSE refers explicitly to Plaintiff Twist's Boom-Air® system and falsely states "the 'Boom Air must be mounted outside and substantially aft of the lift columns:"

11



**Ex. 6. B_GSE Handout, p. 5.**

72. Defendant B_GSE's statements about mounting the Boom-Air® system outside and substantially aft of the lift columns is false.

73. Within the B_GSE Slideshow and the B_GSE Handout, Defendant B_GSE misleadingly claims "the (Plaintiff Twist's) PCAir Unit must be mounted backwards, send airflow in the wrong direction."

74. The B_GSE Slideshow and B_GSE Handout claims about mounting Plaintiff Twists' PCAir Unit backwards misleadingly suggest that Plaintiff Twist's PCAir Unit connected to a Boom-Air® hose management system must always be mounted in a certain orientation, when there are many ways to configure the PCAir Unit.

75. The B_GSE Slideshow and the B_GSE Handout references to "the PCAir Unit" refer to Plaintiff Twist's Boom-Air® system and compare the B_GSE/ATES system to the Boom-Air® system.

76. Within the B_GSE Slideshow and the B_GSE Handout, Defendant B_GSE misleadingly claims that the "OLD Way" (i.e., Plaintiff Twist's Boom-Air® system) has "double the pressure and thermal loss potential of the BGDE [sic] CoolJet® Hose Retriever System."

77. The B_GSE Slideshow and B_GSE Handout are misleading because the pressure and thermal loss potential for any system changes based on the configuration of a specific installation.

78. Within the B_GSE Slideshow and the B_GSE Handout (page 5), Defendant B_GSE misleadingly claims that the BGDE [sic] CoolJet® Hose Retriever System is "oriented in the optimal orientation for airflow."

79. The B_GSE Slideshow and B_GSE Handout statements about optimal airflow are misleading because optimal airflow will vary from one (1) installation to another.

80. Within the B_GSE Slideshow and the B_GSE Handout, Defendant B_GSE misleadingly claims that B_GSE/ATES hose retriever system reduces potential pressure and thermal loss by 50% (as compared to the "OLD way," i.e., the Boom-Air® system).

81. Within the B_GSE Slideshow and the B_GSE Handout, Defendant B_GSE displays different designs that are not equivalent, but Defendant B_GSE claims the same performance improvement (50% reduction in potential pressure and thermal loss) for each design:



**Ex. 6. B_GSE Handout, p. 5.**     **Ex. 6. B_GSE Handout, p. 6.**

82. The B_GSE Slideshow and the B_GSE Handout statements about potential pressure and thermal loss reductions are misleading because potential pressure and thermal loss for the B_GSE hose management system will vary from one (1) installation to another (as shown in the differences between Defendant B_GSE's illustrations on pages five and six of the B_GSE Handout displayed above).

83. Within the B_GSE Slideshow, the B_GSE Handout, and the B_GSE Hose Management Brochure, Defendant B_GSE misleadingly claims that its CoolJet® Hose Retriever was designed "based on long study and field experience."

84. Defendant B_GSE's claims within the B_GSE Slideshow, B_GSE Handout, and B_GSE Hose Management Brochure about "long study and field experience" are misleading because, unlike Plaintiff Twist and its Boom-Air® system to which Defendant B_GSE compares itself, Defendant B_GSE did not engage in a long study and does not have extensive field experience.

85. At dates and times unknown, but no later than September 30, 2019, Defendant B_GSE's home page (https://www.bullerdickgse.com/) included a link to a fifty one (51) page PDF file (electronic filename: B GSE Group (referred to herein as the "B_GSE Company

14

Brochure")) that, among other things, described Defendant B_GSE's hose management system at pages 33-38 and 43.

86. Within the B_GSE Slideshow, the B_GSE Handout, the B_GSE Hose Management Brochure, and the B_GSE Company Brochure, Defendant B_GSE misleadingly claims that its CoolJet® Hose Retriever has "270 units in service worldwide."

87. Defendant B_GSE's claims about "units in service worldwide" are misleading because, unlike Plaintiff Twist and its Boom-Air® system to which Defendant B_GSE compares itself, Defendant B_GSE does not have 270 units in service worldwide.

88. Within the B_GSE Company Brochure, Defendant B_GSE misleadingly claims, with reference to its hose retriever system, "B_GSE offers a more 'logical' approach to the requirement for airflow," and presents a picture of a Boom-Air® unit directly below this assertion:



**Ex. 7. B_GSE Company Brochure, p. 34.**

89. Below the Boom-Air® unit photograph and on the same page of the B_GSE Company Brochure (Exhibit 7, page 34), Defendant B_GSE presents a misleading photograph of its claimed hose management system that shows the hose management system but not the PCA

15

connected to it (and, by necessity, it does not show the pathway for the airflow from the PCA to the hose management system).



**Ex. 7. B_GSE Company Brochure, p. 34.**

90. The photograph is misleadingly incomplete and compares the B_GSE/ATES system directly to Plaintiff Twist's Boom-Air® system.

91. Upon information and belief, Defendant B_GSE disseminated the foregoing false and misleading statements to GSE consumers within the United States, including consumers of Plaintiff Twist's GSE and its supporting services.

92. Upon information and belief, Defendant B_GSE offered for sale and entered into a contract with American Airlines, Inc. to sell and/or is presently negotiating a contract with American Airlines to sell one or more CoolJet PCAir Hose Retrievers to American Airlines.

93. American Airlines is a consumer, customer, or potential customer of Plaintiff Twist's goods and services, including the Boom-Air® hose management system.

94. Upon information and belief, American Airlines relied upon Defendant B_GSE's false and misleading statements and purchased Defendant B_GSE's hose management systems.

16

95. Plaintiff Twist sustained harm, including but not limited to lost sales and reputational injury as a direct and proximate result of Defendant B_GSE's false and misleading statements directed to relevant consumers, including American Airlines.

96. Some of Plaintiff Twist's injuries and loss are irreparable and difficult or impossible to calculate with reasonable certainty and therefore merit imposition of permanent injunctive relief precluding Defendant B_GSE from continuing to make or distribute the false and misleading claims described herein.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (FALSE ADVERTISING)

97. Plaintiff Twist incorporates the allegations in the foregoing paragraphs as if fully restated.

98. Defendant B_GSE, in connection with selling its goods and services in interstate commerce, made false and misleading statements about its own goods and goods and services, including statements comparing such goods and services to goods and services that Plaintiff Twist provides.

99. Defendant B_GSE, in connection with selling its goods and services in interstate commerce, made false and misleading statements about Plaintiff Twist's goods and services.

100. Defendant B_GSE's false and misleading statements include statements that compare Defendant B_GSE's goods and services to goods and services that Plaintiff Twist provides.

101. Defendant B_GSE's false and misleading statements were material to the relevant consumers of GSE products, and their purchasing decision making.

102. Given that Defendant B_GSE's false statements specifically name Plaintiff Twist's Boom-Air® hose management system, Plaintiff Twist is presumed to have sustained resulting damages.

103. Plaintiff Twist sustained actual damages and incurred other losses as a direct and proximate result of Defendant B_GSE's false advertising and false statements.

104. Defendant B_GSE should be permanently enjoined from further false or misleading statements.

## SECOND CLAIM FOR RELIEF
## (DECEPTIVE TRADE PRACTICES)

105. Plaintiff Twist incorporates the allegations in the foregoing paragraphs as if fully restated.

106. Defendant B_GSE, within the course of doing business, used false and deceptive statements and representations in connection with Defendant B_GSE's goods and services.

107. Defendant B_GSE, within the course of doing business, disparaged Plaintiff Twist's goods and services by making false representations about Plaintiff Twist's goods and services, including, without limitation, the statements that Plaintiff Twist's hose retriever system "must be mounted outside and substantially aft of the lift columns."

108. Plaintiff Twist sustained damages and incurred other losses as a direct and proximate result of Defendant B_GSE's deceptive trade practices.

## THIRD CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

109. Plaintiff Twist incorporates the allegations in the foregoing paragraphs as if fully restated.

110. On or about September 23, 2016, Defendant B_GSE issued P.O. No. 2331 (Exhibit 3, attached) and requested that Plaintiff Twist provide products and services, including, without limitation, "start up and training" for Twenty-Three Thousand Three Hundred and Eighty Dollars ($23,380.00).

111. Plaintiff Twist agreed to provide such services.

112. Plaintiff Twist provided such services and issued an invoice to Defendant B_GSE on or about March 20, 2019 in the amount of Twenty-Three Thousand Three Hundred and Eighty Dollars ($23,380.00).

113. Defendant B_GSE failed and refuses to pay for such services.

114. Plaintiff Twist and Defendant B_GSE are parties to an agreement for goods and services.

115. Plaintiff Twist complied with all conditions precedent and fully performed its obligations under said agreement.

116. Defendant B_GSE materially breached the contract by failing to pay for goods and services per the parties' agreement.

117. Plaintiff Twist sustained damages in the amount of Twenty-Three Thousand Three Hundred and Eighty Dollars ($23,380.00), as a direct and proximate result of Defendant B_GSE's breach of contract.

WHEREFORE, Plaintiff Twist Aero, LLC respectfully requests the Court grant the following relief in its favor against Defendant B GSE Group, LLC:

    A.    Damages against Defendant B_GSE in an amount sufficient to compensate Plaintiff Twist for the economic loss that it has suffered and will continue to suffer because of Defendant B_GSE's wrongful behavior, in an amount to be proven at trial;

    B.    Disgorgement of profits realized by Defendant B_GSE in connection with its wrongful behavior;

    C.    Permanent injunctive relief precluding Defendant B_GSE from further false or misleading statements of fact;

    D.    Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues so triable.

*s/ Richard A. Talda*
Attorney at Law

Dated:  October 22, 2019

Respectfully submitted,

By: *s/ Richard A. Talda*
Richard A. Talda (0023395)
COOLIDGE WALL CO., L.P.A.
33 W. First Street, Suite 600
Dayton, OH 45402
Phone:  937-223-8177
Fax:     937-223-6705
E-mail:  talda@coollaw.com

*TRIAL ATTORNEY FOR PLAINTIFF TWIST AERO, LLC*

OF COUNSEL:

Daniel J. Gentry (0065283)
COOLIDGE WALL CO., L.P.A.
33 W. First Street, Suite 600
Dayton, OH 45402
Phone:  937-223-8177
Fax:     937-223-6705
E-mail:  gentry@coollaw.com

w:\wdox\client\006194\00386\01048819.docx